21 F.3d 422
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Norman JACKSON, Plaintiff-Appellant,
v.
CONSOLIDATION COAL COMPANY, McElroy Mine; District 6,
United Mine Workers of America; Local Union 1638,
United Mine Workers of America,
Defendants-Appellees.
 No. 93-1742.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 8, 1993.
Decided March 22, 1994.
 
 Appeal from the United States District Court for the Northern District of Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CA-91-147-W(S))
 James B. Stoneking, Bordas, Bordas & Jividen (David A. Jividen, on brief), Wheeling, WV, for appellant.
 Thomas Michael Myers, Shadyside, OH, for appellees District 6 and Local 1638.
 David J. Laurent, Polito & Smock, P.C. (Thomas A. Smock, on brief), Pittsburgh, PA, for appellee Consolidation Coal.
 N.D.Va.
 AFFIRMED.
 Before RUSSELL and WIDENER, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Norman Jackson appeals the district court's grant of summary judgment against him. We find no merit in Jackson's arguments and accordingly affirm the district court's judgment.
 
 
 2
 * From September 1972 until his alleged wrongful termination in May 1991, Jackson worked for the McElroy Coal Company, a subsidiary of Consolidation Coal Company ("Consol"),[1] as a pipeman. During the course of his employment at the McElroy Mine, Jackson suffered several back and knee injuries for which he filed workers' compensation claims and received benefits.[2]
 
 
 3
 On May 26, 1991, Jackson arrived at the McElroy Mine to work the day shift. Although the parties disagree on the exact time at which Jackson left work, it is undisputed that he left the mine at least a half hour early and without permission from Consol management. Later that evening, during an unrelated traffic stop, the police found Jackson to be in possession of certain tools owned by Consol, including a pipe cutter. The police notified McElroy Mine officials of the incident.
 
 
 4
 On May 30, 1991, Consol issued Jackson a formal notice of suspension with intent to discharge. The notice cited Jackson's early departure from his May 26, 1991 shift as well as his unauthorized possession of mine tools as grounds for his discharge. Believing the discharge to be in retaliation for his receipt of workers' compensation benefits, Jackson, with the assistance of the United Mine Workers of America ("UMWA"), contested the discharge. Jackson's efforts failed, however, as both Consol management and an arbitrator refused to reinstate him.
 
 
 5
 On September 16, 1991, Jackson filed a multi-theory complaint in federal district court in West Virginia against Consol and the UMWA. As relevant here, count three of the complaint alleged that Consol discharged Jackson in violation of W. Va.Code Sec. 23-5A-1, which prohibits an employer from discriminating against an employee because of the pursuit or receipt of workers' compensation benefits.
 
 
 6
 In March 1993, Consol and the UMWA filed motions for summary judgment as to all counts in the complaint. The district court granted both motions and accordingly dismissed the case. Jackson appeals the district court's grant of summary judgment for Consol on count three of his complaint.
 
 II
 
 7
 In reaching its decision to grant Consol's motion for summary judgment on count three, the district court refused to consider certain statements in Jackson's affidavit concerning threats Consol foreman Bob Wetzel allegedly made to Jackson.[3] The district court reasoned that these statements were a sham and did not create a genuine issue of material fact because they conflicted with Jackson's prior deposition testimony, wherein he failed to mention any such threats despite having been repeatedly asked to identify all facts supporting his claim of discriminatory discharge.
 
 
 8
 Jackson now argues that the district court erred by disregarding the threats mentioned in his affidavit. Jackson reasons that the statements did not conflict with his prior deposition testimony because he was never expressly asked whether a member of Consol's management had ever threatened him. We find Jackson's argument to be without merit.
 
 
 9
 Federal Rule of Civil Procedure 56 expressly authorizes a party to oppose a motion for summary judgment, and thereby raise issues of fact, by means of affidavits. Fed.R.Civ.P. 56. Only where a court finds an affidavit to be a sham because it contradicts the affiant's prior testimony may the court disregard it. Rohrbough v. Wyeth Laboratories, Inc., 916 F.2d 970, 975 (4th Cir.1990); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir.1984).
 
 
 10
 We find that the district court here properly rejected as a sham the statements in Jackson's affidavit regarding the threats foreman Wetzel allegedly made. On several occasions in his deposition, Jackson was asked to identify the factual basis for his discriminatory discharge claim. Although Jackson related certain facts, he did not mention any alleged threats from Wetzel. Only in this affidavit, filed in opposition to Consol's motion for summary judgment, did Jackson mention such threats. We find that the statements in Jackson's affidavit regarding these alleged threats clearly conflict with his deposition testimony. The district court, therefore, properly found that the statements were a sham, and, thus, did not create a genuine issue of material fact.
 
 
 11
 We reject Jackson's contention that the district court should not have disregarded his affidavit as a sham because he was never expressly asked at his deposition whether he had been threatened. In a factually similar case which we have previously followed, see Barwick, 736 F.2d at 960, the Second Circuit rejected such a contention. Perma Research and Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir.1969).
 
 
 12
 In Perma Research, the plaintiff alleged that a contract to which it was a party had been procured by fraud. Id. at 574. During four days of taking depositions, the plaintiff's president was repeatedly asked to specify the basis of the alleged fraud. Id. at 578. The only supporting evidence he was able to identify was the defendant's failure to perform the contract. Id. at 577. Nevertheless, in opposition to the defendant's motion for summary judgment, the plaintiff's president submitted an affidavit in which he mentioned, for the first time, certain alleged statements by the defendant's employees as evidence of the alleged fraud. Id. at 578. Noting the significance of the president's failure to mention the alleged threat even though he had been repeatedly asked to specify the basis of the alleged fraud, the court disregarded the affidavit as a sham. Id.
 
 
 13
 The holding in Perma Research is directly applicable here. As in Perma Research, Jackson was repeatedly asked to identify the factual basis for his discriminatory discharge claim and pointed only to certain facts, none of which remotely related to the threats later mentioned in his affidavit. We thus find that the district court correctly disregarded Jackson's affidavit as a sham even though he had not been expressly questioned about Wetzel's alleged threats.
 
 
 14
 In addition to the inherent contradiction between Jackson's deposition testimony and affidavit, other facts compel a conclusion that the statements in Jackson's affidavit regarding Wetzel's alleged threats are a sham. First, although Jackson now suggests that he simply recalled the threats after his deposition was taken, read, and signed, the record is silent as to the reason for Jackson's failure to identify the alleged threats during his deposition. E.g., Martin v. Merrell Dow Pharmaceuticals Inc., 851 F.2d 703, 706 (3d Cir.1988) (affirming the district court's refusal to consider a sham affidavit where the affidavit contradicted the affiant's previous testimony, the affiant was carefully questioned on the issue and had access to the relevant information, and the affiant provided no satisfactory explanation for the contradiction).
 
 
 15
 Second, we find it surprising that Jackson did not mention the alleged threats at his deposition given the fact that he had previously asked his UMWA representatives to raise the discriminatory discharge issue at the arbitration hearing. Finally, common sense dictates that a plaintiff alleging discriminatory discharge is not likely to forget repeated threats made by his employer. This is especially true here because the alleged threats constitute Jackson's best evidence that his pursuit of workers' compensation benefits motivated Consol to discharge him.
 
 
 16
 Accordingly, we find that the district court properly disregarded Jackson's affidavit as a sham.[4]
 
 III
 
 17
 The sole issue before the district court when it considered Consol's motion for summary judgment on count three was whether Jackson had demonstrated that there was a genuine issue of material fact as to the causation element of the prima facie case for discriminatory discharge under W. Va.Code Sec. 23-5A-1. In reaching its decision to grant Consol's motion, the district court individually evaluated each piece of evidence that Jackson submitted in opposition to Consol's motion. On appeal, Jackson argues that the district court erred by looking at the evidence individually rather than as a whole.
 
 
 18
 We find Jackson's contention to be completely without merit. Regardless of the manner in which the district court considered the evidence of record, it is clear that there was no genuine issue as to any material fact and that no evidence of record reasonably supported a finding that Jackson's pursuit of workers' compensation benefits was a significant factor in the decision to discharge him. Thus, even if the district court had collectively considered the evidence, it would have still granted Consol's summary judgment motion.
 
 IV
 
 19
 For the reasons stated, we find that the district court committed no error in granting Consol summary judgment on count three of Jackson's complaint and accordingly affirm the district court's judgment.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 For purposes of this appeal, Consol has stipulated that it was Jackson's employer during all times relevant to this appeal
 
 
 [2]
 On February 24, 1981, Jackson injured his back. On April 30, 1982, Jackson injured one of his knees. As a result of this injury, Jackson left work for over five years. On April 5, 1990, Jackson reinjured his back. Finally, on August 19, 1990, Jackson reinjured his knee
 
 
 [3]
 In his affidavit, Jackson asserted that "[o]n numerous occasions after my on the job injury on April 5, 1990, and again after my on the job injury on August 19, 1990, Wetzel threatened to'take [me] out,' i.e., to discharge me, when I advised him of these difficulties."
 
 
 [4]
 Jackson also argues that the district court erred when it disregarded as a sham the affidavit of James Wade, a co-worker of Jackson. In his affidavit, Wade stated that "after Jackson's injury in April, 1990, and continuing until he was discharged, Bob Wetzel, a foreman, repeatedly threatened to 'take [Jackson] out,' i.e., to discharge him, when he complained that he was unable to do certain job assignments because of his injury." Jackson contends that Wade's affidavit establishes a genuine issue of material fact as to causation, the only element of his prima facie case that Jackson had to establish to escape summary judgment
 Assuming the truth of Wade's affidavit, we find that it does not establish a genuine issue of material fact as to causation. Specifically, Wade states in his affidavit that Jackson's foreman wanted to fire Jackson because he was "unable to do certain job assignments." This vague statement has nothing to do with the issue of whether Consol's management fired Jackson in retaliation for his receipt of workers' compensation benefits and is thus insufficient to establish an issue of fact as to causation.
 Because we find that Wade's affidavit, if taken as true, does not create a genuine issue of material fact as to causation, we decline to address Jackson's contention that the district court erred when it disregarded as a sham Wade's affidavit.